IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CARY D. KERR, | § | |
|      *Petitioner,* | § | |
| | § | |
| V. | § | No. 4:06-CV-372-Y |
| | § | |
| RICK THALER, Director, | § | (death-penalty case) |
| Texas Department of Criminal | § | |
| Justice Correctional | § | |
| Institutions Division,[1] | § | |
|      *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

Texas death row inmate Cary D. Kerr ("Petitioner" and "Kerr") has filed a petition for a writ of habeas corpus pursuant to Title 28, United States Code, Section 2254.  Respondent is Rick Thaler, the Director of the Institutional Division of the Texas Department of Criminal Justice (TDCJ-ID).  For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

### *History*

On July 12, 2001, Cary D. Kerr sexually assaulted and murdered Pamela Horton.  A jury convicted Kerr of capital murder and sentenced him to death in March of 2003, which conviction and sentence were affirmed by the Texas Court of Criminal Appeals on direct appeal.

---

[1] The previously-named respondent in this action was Nathaniel Quarterman. On July 15, 2009, Rick Thaler succeeded Nathaniel Quarterman as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, he "is automatically substituted as a party."

*See Kerr v. State*, No. 73,267 (Tex. Crim. App. 2005)(unpublished). During the pendency of this direct appeal, Kerr also filed an application for writ of habeas corpus in the state trial court, which was denied on August 31, 2005. *Ex parte Kerr*, No. WR-62,402-01 (Tex. Crim. App. 2005)(unpublished). The original petition was timely filed and is properly before this Court. After ruling on motions to supplement these claims, Petitioner was granted a change of counsel and ample time has been afforded counsel to review and make any further attempts to amend the pleadings in this cause. Therefore, the claims are fully ripe for resolution by this Court.

### *Claims*

In seven grounds for relief, Kerr complains of the capital procedures and execution process in Texas as follows: (1) the indictment failed to set forth aggravating factors later submitted as special issues, (2) the prosecution was not required to disprove mitigation beyond a reasonable doubt, (3) the prosecutor had unfettered discretion to seek the death penalty, (4) the instructions did not inform the jury of the consequences of its failure to agree on a special issue, (5) the trial court rejected Petitioner's requested jury charge on special issue No. 1, (6) special issue No. 1 to did not properly charge the burden of proof, and (7) the current method of execution by lethal injection violates the Eighth Amendment. For the reasons set out below, none of these allegations is sufficient to establish a right to the relief requested.

2

### *Applicable Law*

This proceeding is governed by the terms of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), 28 U.S.C. § 2254, because the petition for a federal writ of habeas corpus was filed after April 24, 1996.[2] *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997).  Therefore, this opinion applies the standards set forth in the AEDPA.

### *Procedural Bar*

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, __ U.S. __, 129 S.Ct. 1769, 1780, 173 L.Ed.2d 701 (2009) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) and *Lee v. Kemna,* 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)).  Therefore, the Court addresses these issues first.

To be independent of the federal question, a state-court decision must rely upon a state-law ground, such as a procedural default, that is entirely separate from the federal law supporting the merits of the claim. *See Coleman*, 501 U.S. at 729-730; 111 S.Ct 2554.  To be

---

[2] This is the effective date of the AEDPA.

adequate to bar federal review, a state procedural rule must be "firmly established and regularly followed" at the time that it was applied, *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991), and the state court's application of the procedural rule must not otherwise be exorbitant. *See Lee*, 534 U.S. at 376, 122 S.Ct. at 885.

The determination of the adequacy of state procedural bars "is itself a federal question." *Cone*, 129 S.Ct. at 1780. Petitioner bears the burden of showing that a state procedural rule is not adequate to bar federal review, *see Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997), that sufficient cause and prejudice exist to excuse the procedural default, or that imposition of the bar would result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.

Respondent alleges that two of Petitioner's claims are unexhausted and now procedurally barred. (Answer at 2, 27-28, 30-33.) In his fifth ground for relief, Petitioner claims that the trial court denied his rights to due process under the Fifth, Sixth, and Fourteenth Amendments, and against cruel and unusual punishment under the Eighth and Fourteenth Amendments, by rejecting his requested jury charge on the burden of proof for special issue number one. (Petition at 30-36.) However, Petitioner does not identify in his petition that portion of the record in which he requested any charge on special

4

issue number one (the future-dangerousness special issue), and this Court has found none.[3] Similarly, Petitioner has not identified any place in the record where a claimed rejection of a requested special issue on future dangerousness was denied, and this court has found none.[4] Therefore, it appears that this claim has not been presented to the state courts, at least as it is being presented in Petitioner's fifth ground for relief.

In his seventh claim for relief, Petitioner claims that his rights under the Eighth Amendment would be violated by the current method of execution used in Texas because it involves the use of a chemical substance, pancuronium bromide, that has been banned in euthanizing animals. (Petition at 36-45.) This claim has also not been presented to the state courts.  The question now becomes whether these unexhausted claims are also procedurally barred.

"Under 28 U.S.C. § 2254(b)(1)(A), a court shall not grant habeas relief unless 'the applicant has exhausted the remedies available in the courts of the State'." *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  Generally, a petition containing unexhausted claims must be dismissed so that the petitioner may return to state court

---

[3]The record of state-court proceedings before this Court indicates that Petitioner filed motions to instruct the jury on the mitigation special issue, but not the future-dangerousness special issue. (Clerk's Record, "CR", 143-145; 224-227.)

[4]This deficiency would subject this claim to Respondent's alternative assertion that it is inadequately briefed. (Answer at 28.)  However, it is unnecessary to reach that alternative defensive issue.  Since this claim does not appear to have been presented to the state courts, additional briefing would make no difference.

to exhaust state remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy,* 455 U.S. 509, 519-20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, dismissal would be futile and the federal court should find claims to be procedurally barred "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1.

Applicable state law precludes successive habeas claims except in narrow circumstances. *See* Tex. Crim. Proc. Code Ann. art. 11.071. § 5. Under Texas law, unless Petitioner presents a factual or legal basis for a claim that was previously unavailable or shows by a preponderance of the evidence that, but for a violation of the United States Constitution, no rational juror would have found for the State, Petitioner is procedurally barred from returning to the Texas courts to exhaust his claims. *Id.*

However, this requirement only applies to claims that must be brought in state habeas proceedings. Petitioner's seventh claim would not be subject to the procedural bar set out in Section 5 of Article 11.071 of the Texas Code of Criminal Procedure (restricting subsequent applications for habeas-corpus relief) because such claims are not cognizable on habeas corpus in Texas courts. *See Ex parte Alba*, 256 S.W.3d 682, 685-687 (Tex. Crim. App. 2008). Therefore, it is not

subject to this procedural bar, but may be denied on its merits notwithstanding any failure to exhaust. *See* 28 U.S.C. § 2254(b)(2).

Conversely, Petitioner's fifth ground for relief presents a claim that may be brought in a state habeas proceeding,[5] and he has not shown to this Court that he could satisfy the requirements of this statute and would not be barred from making this claim in a successive state habeas-corpus petition. Therefore, it would be pointless to send him back to exhaust this claim in state court, and he is now considered procedurally barred from proceeding with his fifth claim for relief in this court. *See Beazley*, 242 F.3d at 264 (5th Cir. 2001)(citing *Coleman v. Thompson*, 501 U.S. at 735 n.1, 111 S.Ct. at 2557 n.1). Therefore, Petitioner's fifth ground for relief is denied as barred.[6]

---

[5]In *Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007)(citing *Ex parte Gardner*, 959 S.W.2d 189, 191 (Tex. Crim. App. 1996, clarified on reh'g Feb. 4, 1998)), the Court of Appeals held that the state procedural rule barring consideration in habeas review of record claims not raised on direct appeal were an independent and adequate state ground to preclude federal habeas review. The instant claim appears to be the type of record claim that could be barred under this rule. However, it was not raised by Respondent and would constitute yet another reason that this claim could be procedurally barred. Therefore, it is unnecessary to resolve that question potentially leading to the same result.

[6]To the extent that the substance of this claim may have been presented to the state courts (*see e.g.*, Petitioner's Point of Error No. 10; Volume 1 of the State Habeas Record on pages 46-56, hereinafter cited as 1 SHR 46-56; 2 SHR 342-343), that claim is addressed on the merits in this Court's discussion of Petitioner's sixth claim for relief.

*Deference Scheme*

The AEDPA provides the following deference scheme for review of state determinations of claims that were adjudicated on the merits in state court:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has explained that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning.

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, of if it decides a case differently than we have done on a set of materially indistinguishable facts. [*Williams v. Taylor*, 529 U.S. 362,] at 405-406. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id*. at 407-408. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.* at 409-410. See also *id.*, at 411 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002); *See also, Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001).   Under the "unreasonable application" analysis, it is not enough that the state court incorrectly applied federal law.  To be entitled to relief, Petitioner must show that the "ultimate legal conclusion" reached by the state court was objectively unreasonable.  *Neal v. Puckett*, 286 F.3d 230 (5th Cir. 2002); *Williams*, 529 U.S. at 409-11, 120 S.Ct. at 1521-22.

However, this deference scheme applies only to issues that have been adjudicated on the merits in state court.  A resolution or "adjudication" on the merits in the habeas-corpus context is a term of art that refers to the state court's disposition of the case on substantive rather than procedural grounds. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000); *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir.  1997).  This standard applies to the remaining claims, which were exhausted and denied in state court.

### Defects in Indictment

Petitioner first claims that the indictment against him was fundamentally defective and violated his rights under the Fifth and Fourteenth Amendments because it did not allege aggravating factors that were later submitted to the jury as special issues. (Petition at 1-8.)  He relies upon *United States v. Robinson*, 367 F.3d 278,

288 (5th Cir. 2004), for the proposition that these are elements of the offense that must be alleged in the indictment and proven by the prosecution in order to make the eligibility determination for the death penalty.  Petitioner's reliance on *Robinson* is misplaced.

*Robinson* set forth the requirements of an indictment in a federal prosecution resulting in a death penalty.  Although not mentioned by Respondent, the Fifth Amendment right to indictment has not been incorporated into the Due Process Clause of the Fourteenth Amendment as applicable to the states. *See Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884); *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(noting that the Fifth Amendment right to indictment was not among the Bill of Rights provisions incorporated into the Fourteenth Amendment).  Therefore, the specific requirements of the Fifth Amendment pertaining to federal indictments are among the few provisions of the Bill of Rights not incorporated into the Fourteenth Amendment requirements imposed on the states.  Accordingly, those requirements of federal indictments set forth in *Robinson* relied upon by Petitioner are not applicable to criminal prosecutions in Texas state courts.  This alone is sufficient to deny Petitioner's Fifth Amendment claim.

Even so, this claim is addressed by Respondent in the context of the requirement that under "the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an

indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435 (2000); *Ring v. Arizona*, 536 U.S. 584,, 599, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556 (2002). Even as so construed, this claim either misstates the requirements of *Apprendi* and *Ring*, misunderstands the procedures in Texas for the trial of death penalty cases, or both.

Under the Texas death-penalty system, the eligibility determination is made by looking to the aggravating factors elevating a murder to a capital offense, e.g., committing the murder in the course of another felony offense such as aggravated sexual assault. *See* Tex. Penal Code § 19.03(a)(2). This determination is to be made in the guilt phase upon elements alleged in the indictment, as it was in this case. (Reporter's Record, "RR", at 295-299.)

The special issues in Texas do not set forth aggravating factors for this eligibility determination, but instead are designed to narrow the jury's discretion in making the ultimate decision whether to impose the death penalty. *See Jurek v. Texas*, 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Therefore, these special issues are not elements of the offense that must be alleged in an indictment and proven by the prosecution beyond a reasonable doubt.

However, even if these special issues actually did present the kind of aggravating factors requiring the procedural safeguards set forth in *Apprendi* and *Ring*, the retroactive application of such

11

requirements in federal habeas review of state convictions would be barred by the nonretroactivity doctrine of *Teague*. *See Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). Accordingly, under any of these methods of analyzing this claim, it must be denied.

### *Mitigation Burden of Proof*

Petitioner's second ground presents a related complaint.  In it, Petitioner claims that the state court deprived him of his right to a jury trial under the Fifth, Sixth and Fourteenth Amendments by not requiring that the prosecution prove special issue number two, the mitigation special issue, beyond a reasonable doubt.  However, this complaint also relies upon a fatal mischaracterization of the nature of these special issues in the Texas death penalty system as discussed in the analysis of Petitioner's first claim.  However, since this claim specifically addresses the mitigation special issue, some additional analysis is in order.

The United States Court of Appeals for the Fifth Circuit has noted with respect to an ultimate mitigating element, one which has become a constitutional disqualification for the death penalty, that "neither *Ring* and *Apprendi* nor *Atkins* render the absence of mental retardation the functional equivalent of an element of capital murder [that] the state must prove beyond a reasonable doubt." *In re Johnson*, 334 F.3d 403, 405 (5th Cir. 2003).  Since such proof is not required

regarding an ultimate mitigation issue, it would not be required regarding lesser ones.

In disposing of a similar claim, the Court of Appeals subsequently noted not only that such claim lacked merit but also that *Summerlin* barred any retroactive application of *Ring* on collateral review.

> No Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof. Circuit precedent has specifically rejected the argument that there is a constitutional requirement that mitigation special issue evidence be subject to appellate review by the state. *Woods*, 307 F.3d at 359-60 (continuing to hold that the TCCA's refusal to review mitigating evidence is "within the ambit of federal law as interpreted by the Supreme Court"). In addition, we find that any argument premised upon an application of *Ring* is foreclosed as to Rowell because his conviction was final upon direct review in October 1997 before *Ring* was announced in June 2002, *see* 28 U.S.C. § 2244(d)(1)(A), and because *Summerlin* has further clarified the nonretroactivity of *Ring*, 124 S.Ct. at 2526.

*Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. 2005). Therefore, the same result obtains. *Ring* does not require a heightened burden of proof, but if it did then the claim would be barred by *Teague*. Petitioner's second claim is denied.

### *Prosecutorial Discretion*

In his third claim for relief, Petitioner contends that the Texas procedure which gives discretion to the prosecutor regarding whether to seek the death penalty without having to disclose the aggravating factors relied upon or present them to a grand jury, violates the

13

Fifth, Eighth and Fourteenth Amendments.  For the reasons set out below, this claim is denied.

Petitioner's complaint does not allege any facts suggesting any discriminatory practice or improper prosecutorial intent in the use of the Texas statutory system of prosecuting death penalty cases. Instead, it is based purely upon a perceived defect in the Texas system that assigns to the elected prosecutor the discretion of deciding,  without having to disclose his reasons, whether to seek the death penalty.  In this claim, Petitioner reasserts an argument that the Fifth Amendment right to indictment is violated, comparing Texas procedures with the federal procedures for charging capital cases. However, these federal requirements are inapplicable to Texas state prosecutions as set out above. *See Hurtado*, 110 U.S. at 538, 4 S.Ct. at 122.

This Court must consider the importance of "the prosecutor's broad discretion to control the decision to prosecute." *Miracle v. Estelle*, 592 F.2d 1269, 1272 (5th Cir. 1979).  The Supreme Court has emphasized the importance of this discretion even in death-penalty cases. "Because discretion is essential to the criminal justice process, we would demand exceptionally clear proof before we would infer that the discretion has been abused." *McCleskey v. Kemp*, 481 U.S. 279, 297, 107 S.Ct. 1756, 1770, 95 L.Ed.2d 262 (1987).  Nothing close to such clear proof has been identified.

14

Petitioner has not set forth any clearly-established federal law removing discretion from state prosecutors to seek the death penalty, and this Court is aware of none.  Respondent contends that this claim lacks merit and would also be barred by the nonretroactivity doctrine of *Teague*.  The Court agrees.  This novel claim does not state a present violation of the Constitution and any new rule in accordance with these allegations would violate *Teague*.  Therefore, Petitioner's third claim must be denied.

### *The Ten-"No"-Vote Instruction*

In his fourth claim, Petitioner complains that he was denied his right to due process of law and had cruel and unusual punishment imposed upon him in violation of the Eighth and Fourteenth Amendments because the Texas death penalty scheme requires that the jury be instructed that at least ten jurors must agree (i.e., ten "no" votes) in order for the jury to return a negative answer to the punishment-phase special issues, and that the lack of an instruction on the effect of a jury deadlock exacerbated this Constitutional defect. (Petition at 24-30.) Respondent asserts that these claims lack merit, are foreclosed by circuit precedent, and are also barred by the nonretroactivity rule of *Teague*. (Answer at 26-27.)  For the reasons set out below, this claim is denied.

The instructions submitted by the trial court to the jury in the punishment phase provided, in part, as follows:

The prosecution has the burden of proving that the answer to Special Issue Number 1 should be "Yes", and it must do so by proving a "Yes" answer to Special Issue Number 1 beyond a reasonable doubt, and if it fails to do so, you must answer Special Issue Number 1 "No".

\*   \*   \*

You may not answer Special Issue Number 1 "Yes" unless you agree unanimously.

You may not answer Special Issue Number 1 "No" unless ten (10) or more jurors agree.

Members of the jury need not agree on what particular evidence supports a negative answer to Special Issue Number 1.

If the jury answers Special Issue Number 1 "Yes", then you shall answer the following Special Issue Number 2; otherwise, do not answer Special Issue Number 2.

\*   \*   \*

You shall answer Special Issue Number 2 "Yes" or "No".

You are instructed that you may not answer Special Issue Number 2  "No" unless you agree unanimously.

You may not answer Special Issue Number 2 "Yes" unless ten (10) or more jurors agree.

Members of the jury need not agree on what particular evidence supports an affirmative finding on Special Issue Number 2.

\*   \*   \*

If the jury returns an affirmative finding on Special Issue Number 1, and a negative finding on Special Issue Number 2, the Court shall sentence the Defendant to death.  If the jury returns a negative finding on Special Issue Number 1, or an affirmative finding to Special Issue Number 2, the Court shall sentence the Defendant to confinement in the Institutional Division of the Texas Department of Criminal Justice for life.

16

(CR 304-306.)  In both special issues, unanimity was required to return a verdict that would support death, but only ten jurors were required to agree upon a verdict that would support a life sentence. Also, an affirmative answer was required on the first special issue and a negative answer on the second special issue in order to support a death sentence, but either one answered otherwise would result in a life sentence.  If the jury were unable to answer either of these issues, the result would be a life sentence. *See* Tex. Crim. Proc. Code Ann., art. 37.071(2)(g) (Vernon 1993); *Jackson v. State*, 17 S.W.3d 664, 677 (Tex. Crim. App. 2000).

Petitioner does not contend that the jury instructions were in any conflict with Texas law.  The complaint here is that Texas law itself resulted in a misleading instruction because it failed to allow the jury to know the consequences of any one juror's refusal to agree.

Respondent has directed this Court to the controlling authority on this point.  In *United States v. Jones*, 527 U.S. 373, 381-382, 119 S.Ct. 2090, 2098-2099, 144 L.Ed.2d 370 (1999), the Supreme Court addressed the question of whether a jury must be instructed on the consequences of its failure to agree on a verdict in the following passage.

> In theory, the District Court's failure to instruct the jury as to the consequences of deadlock could give rise to an Eighth Amendment problem of a different sort: We also have held that a jury cannot be "affirmatively misled regarding its role in the sentencing process." *Romano v. Oklahoma*, 512 U.S. 1, 9, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). In no way, however, was the jury affirmatively misled by the District Court's refusal to give petitioner's

17

proposed instruction. The truth of the matter is that the proposed instruction has no bearing on the jury's role in the sentencing process. Rather, it speaks to what happens in the event that the jury is unable to fulfill its role-when deliberations break down and the jury is unable to produce a unanimous sentence recommendation. Petitioner's argument, although less than clear, appears to be that a death sentence is arbitrary within the meaning of the Eighth Amendment if the jury is not given any bit of information that might possibly influence an individual juror's voting behavior. That contention has no merit. We have never suggested, for example, that the Eighth Amendment requires a jury be instructed as to the consequences of a breakdown in the deliberative process. On the contrary, we have long been of the view that "[t]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896). We further have recognized that in a capital sentencing proceeding, the Government has "a strong interest in having the jury express the conscience of the community on the ultimate question of life or death." *Lowenfield v. Phelps*, 484 U.S. 231, 238, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (citation and internal quotation marks omitted). We are of the view that a charge to the jury of the sort proposed by petitioner might well have the effect of undermining this strong governmental interest.

(Footnotes omitted).

In *Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000), the Court of Appeals considered this same complaint against the Texas capital sentencing instructions, and held that it was barred by the nonretroactivity doctrine of *Teague*. Therefore, Petitioner's fourth claim for relief is barred by *Teague*, and in the alternative lacks merit, and is denied.

## *Future-Dangerousness Special Issue*

In his sixth claim, Petitioner contends that he was denied due process of law under the Fifth, Sixth, and Fourteenth Amendments because Art. 37.071, § 2(b)(1) of the Texas Code of Criminal Procedure is unconstitutional, in that it diminishes the State's burden of proof on special issue No. 1 from "beyond a reasonable doubt" to "probable" and because it does not require the court to inform the jury as to how it must determine beyond a reasonable doubt, the "probability" that Petitioner will constitute a continuing threat to society.   In this claim, Petitioner also reasserts his argument that *Ring* and *Apprendi* would construe this special issue as an element of the offense.   The Court of Appeals has repeatedly denied such claims. *See Scheanette v. Quarterman*, 482 F.3d 815, 827-828 (5th Cir. 2007); *Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir. 1996); *James v. Collins*, 987 F.2d 1116, 1120 & n. 5 (5th Cir. 1993).

In *Rowell v. Dretke*, the court of appeals held that a similar argument did not state a violation of the Constitution and observed that this argument would create a new rule of constitutional law in violation of the nonretroactivity doctrine of *Teague*.

> Texas's use of special issue no. 1 in the punishment phase of Rowell's capital case, which required the jury to answer "yes" only if the State had proven "beyond a reasonable doubt that there is a probability that [Rowell] would commit criminal acts of violence that would constitute a continuing threat to society," does not violate *Blakely*, *Apprendi*, or *Ring*. Accepting Rowell's argument that special issue no. 1 is unconstitutional because the term "probabil-ity" swallows the reasonable doubt standard under an

> extension of *Apprendi* and *Ring* by *Blakely* would be a
> violation of *Teague*. *See* 489 U.S. at 316, 109 S.Ct. 1060.
> Moreover, nothing in *Blakely* requires that special issue
> no. 2 be subjected to the "beyond a reasonable doubt"
> burden of proof. Accepting such an argument also would
> create a new constitutional rule violating *Teague*. *See* 489
> U.S. at 316, 109 S.Ct. 1060.

398 F.3d at 379. Therefore, Petitioner's sixth claim for relief lacks

merit, the argued extension of the law would violate *Teague*, and the

claim must be denied.

### *Method of Execution*

In his seventh claim, Petitioner claims that his rights under

the Eighth Amendment would be violated by the current method of

execution used in Texas because it involves the use of a chemical

substance, pancuronium bromide, than has been banned in euthanizing

animals. (Petition at 36-45.)  Petitioner amended this claim as

reflected in his Amended Memorandum Supporting Writ to address the

impact of *Baze v. Rees*, ___ U.S. ___, 128 S.Ct. 1520, 170 L.Ed.2d

420 (2008), in which the Supreme Court held that Kentucky's use of

the same three-drug protocol in lethal injections does not offend

the Eighth Amendment. (Am. Mem., doc. #26.)

Petitioner argues that because the Constitution of the State

of Texas provides greater protection than the United States

Constitution, that a state challenge could still have merit. ( Am.

Mem. at 2.)  However, this would be irrelevant to the present action

since Federal courts in post-conviction habeas corpus proceedings

do not sit to review questions of state law. *See Engle v. Isaac*, 456

U.S. 107, 119-21, 102 S. Ct. 1558, 1567-68, 71 L.Ed.2d 783 (1982); *see also Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000)(referring to this as a "long-standing principle"); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991)("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding").

This amended claim appears designed to urge the Supreme Court to reconsider its ruling in *Baze*. (Am. Mem. at 2-9.) Petitioner does not request an evidentiary hearing, but merely invites this Court to peruse the literature on this subject which is now available in the public domain. (Am. Mem. at 3.)  However, such an ex-parte investigation is unwarranted, and does not satisfy Petitioner's burden to distinguish this case from the method that the Supreme Court has approved in *Baze*.  Accordingly, Petitioner's seventh claim for relief is denied notwithstanding Petitioner's failure to exhaust his remedies in the state courts. *See* 28 U.S.C. § 2254(b)(2).

## CONCLUSION

For the reasons set forth above, the petition of Cary D. Kerr for habeas corpus relief is denied.

SIGNED September 17, 2009.

*Terry R. Means*
_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/rs